Welcome to our court. At the outset, Judge Newsom and I wanted to welcome to our court today and this week Judge Buckler from the Middle District of Florida. We're delighted to have her sitting with us. She brings a world of experience and has sat with the court for many years. Great distinction. For many years on the Middle District of Florida, we very much appreciate her help with our caseload today. Second observation for you before we begin. As you proceed with your arguments, you can safely assume that we've had a chance to fully review the briefs in the case, the record excerpts, and in many instances we've had a chance to go back and review the underlying record as well. So feel free to really go to the heart of your argument. Third and last observation for those of you who may not be familiar with our timing and lighting system, you'll note that there's a clock that will give you an idea of how much time you have left. You've said, if you are the appellant, how much time you want to reserve for your reply argument. We've got a lighting system. Green means go. Yellow is a two-minute warning and red means your time is up. So we'd be much appreciative when you see the red light go on if you could bring your remarks to a conclusion. One of my colleagues is fond of saying the red light is not aspirational. So we'd be much appreciative if you'd be mindful of the time. That doesn't mean if you're in the middle of a sentence you've got to stop, but just wrap it up when you see the red light go on. With that, we'll begin with our first case, which is Target Media Partners v. Specialty Marketing Corporation, and we'll begin with the appellant. My name is Randy James, and I represent Target Media Partners and Ed Leder in this appeal. The district court dismissed my client's claims based on the Rooker-Feldman doctrine, and we believe that the court did so incorrectly. As a background, Target Media publishes free magazines which are distributed throughout the country. It's basically advertising for truck jobs. Parties have a long history with each other going back to 2002 when Target Media Partners operating company, LLC, was sued by specialty marketing in a separate case. Here, seven years after the relationship ended and four years after there was an underlying judgment in Calhoun County, specialty marketing mailed an anonymous letter to my client's advertisers. In that, specialty marketing included a bullet point list of nine things that they provided. In doing so, when you look at number nine and ten, it included a CD disc with 250 pictures, and it says brand new books thrown away without being delivered. Most of the books are Target Media books, and interesting, inside of that there were publications in 2010, not going back to 2002 and 2006. And he concluded the letter, which was sent anonymously, it is my belief that you and everyone else who has any business or personal dealings with Target Media Partners, their owners and officers need to know this documented trial proven fraud by them. So that much with respect to the first sentence of the last paragraph you would concede refers to the specialty versus Target suit? Yes, sir. Trial proven, right? Yes, sir. Okay. So keep going because I think there's an interesting discussion to be had about sentences one, two, and three in that final paragraph. Right. Yes, sir. All of which have been upheld by the Alabama Supreme Court. Further, it is my belief that many others have been and continue to be victims of this fraud. The district court in this case ruled that the terms have been and continue to be victims of this fraud related to the 2002 to 2006 relationship between the parties. But in this case, the letter was sent to our advertisers who are not publishers, who are not sending out these magazines. It's our major source of revenue. And so we filed suit for fraud and libel per se against specialty marketing in this case. But much of what was sent were the trial testimony, the judgment, that kind of thing, right? Well, part of it is, and this case had sort of a unique procedural history. Specialty marketing waived their 12B6 motions. And so when it came back with the first report and recommendation, the court allowed us to go forward. Then it was reviewed by Judge Boudry who sent a, in her order, requested that we look at this based on Rooker-Feldman and it came back. But we've not gotten into what all the contents of that letter contains. Many of the things in here were not part of the trial. For instance, if you look at number 7, Gary Poe, he never testified in the trial. And I have a unique history in here and some say I'm too close to the case because I've had this case now for the better part of 10 years representing this client. But what we have to look at when Rooker-Feldman, when ExxonMobil and Saudi Arabia Industries issued that opinion, and what the court asked us to look at going forward was whether or not my client's claims would nullify the state court judgment. So let me ask you a question about our post-Exxon Rooker-Feldman cases. And it's complicated because there are these two cases, I think Nicholson and I don't know if you pronounce it Casale or Casale or whatever, but you know what I'm talking about. Yes, sir. They came out the day apart. Decided a day apart and seemingly sort of on different trajectories, at least to me if you read them. I read Nicholson, and I think this is an Exxon decision sort of very narrowly construing the doctrine. You read Casale, and you think this seems pre-Exxon to me. It does. And so what do we do with those? I mean Casale came out the day before Nicholson. Ordinarily, this court has a rule that the first sort of decision on point controls the latter. So what do we do with those two? Well, I think you have to go back to the Saudi Arabia case. And what the Supreme Court said, and I'll read it, which I think is right on point. And it says, The Rooker-Feldman doctrine we hold today, this is in Saudi Arabia, is confined to cases of the kind from which the doctrine acquired its name. Cases brought by state court losers, complaining of injuries caused by state court judgments, rendered before the district court proceedings commenced, and inviting district court review and rejection of those judgments. And here my client's claims are not seeking to undermine the judgment. That judgment is set. What they're complaining about are these new tortious acts committed by specialty marketing. Let me ask you the question this way. Could the state court have adjudicated the libel claim if it chose to? Isn't the answer no because it post-stated that? Yes, sir. So there was no way on God's green earth the state court adjudicating breach of contract could possibly have addressed a claimed libel, which didn't occur until four years later. Yes, sir. They could not have adjudicated it. Because Sal says that when we look to divine the meaning of inextricably intertwined, we've defined it to mean those claims that, if successful, would effectively nullify the state court judgment. That's what we say in Cassau. Yes, sir. Would any determination about defamation nullify effectively the state court judgment about breach? No, sir, it could not. Tell me why not. Well, because the libel occurred four years later. It has absolutely nothing to do with what occurred during the trial. It's completely unrelated. I understand that there were facts and a judgment entered in the underlying case, but what was done after has no relation to it. It could not nullify the judgment. Well, but the letters contents, in fact, report on the state court trial and the state beliefs regarding the findings. So it bears on it in the sense that it amounts to a commentary drawn from that trial. It does. It's bound together at least in that way. It is, but it couldn't overturn that judgment. You could fine for my client, a jury could fine for my client, for libel and misrepresentation, and it would not affect the judgment that was entered. And so do you – it sounds to me like you've got sort of two arguments. The one is under a proper reading of Exxon and even our post-Exxon cases, the standard is not really inextricably intertwined in a loose sense, but instead sort of what the Exxon court said, you know, the kinds of cases from which the doctrine got its name. And then separately you say even under an inextricably intertwined standard as it existed pre-Exxon, I win because it wouldn't necessarily nullify the underlying judgment. Yes, sir. Okay. And in this case, what I think the district court did was they went to the merits. When they looked at what the letter said, instead of addressing simply the elements of Rooker-Feldman, they went to the merits on what the letter contained, and that's an issue that we can decide later on summary judgment or some other point. Yeah, will you face preclusion problems even if you get beyond Rooker-Feldman? I was curious about that. May very well, and I don't think Rooker-Feldman should be used as an issue preclusion tool, which is sort of what happened here. Can I ask you just a factual question? And it sounds like you're the right guy to ask since you've been with the case the whole time. I was curious, what was the subject of your cert petition to the U.S. Supreme Court when you lost the fraud claim? I didn't know what the federal issue would be that you would take to the U.S. Supreme Court. Yes, sir. It was on punitive damages against the individual primarily. We appealed that for the company as well, but it was related mainly to the individual in this case. Got it. Who is also a party here. He's referred to as an officer. And the clerk warned me earlier, if we could leave you some time, that would be wonderful. When you look at this case, I believe Saudi Arabia, the ExxonMobil Saudi Arabia case is on all fours here. There may be another opportunity down the road for specialty marketing to move for summary judgment, but here we're looking solely did my clients file a claim for which they could recover, and that claim would not nullify the judgment here. Thank you. Thank you. You have reserved four minutes for rebuttal. Yes, sir. May it please the Court. I'm Tim Knight, Thomas Knight. I represent the defendants, the appellees in the case. I think one thing that distinguishes this case and what the state court found from what you might see in a lot of other cases is the extreme detail that you see in both the state court, that is the circuit court, which is the local trial court in Alabama, and the Supreme Court twice reviewing this and going into what you'd have to call agonizing detail in its opinions. The significance of that for the case that we're here on today is that everything that was presented or sent to these people, to customers of a subsidiary, was in detail covered in the state court. Right, but here's the problem I'm having, and you can help me with it. It would have seemed to me that the timing of the defamatory speech means that it couldn't effectively be grounds for a Ruckerfeldman bar. We said long before ExxonMobil's limitation that Ruckerfeldman would not be a bar to jurisdiction where, quote, an issue did not figure and could not reasonably have figured in the state court's decision. We said that in Wood v. Orange going back to 1983, and it seemed to me that in the facts before us, you have an Alabama jury trial. They render a verdict on breach of contract, promissory fraud, and fraudulent misrepresentation verdicts against target media as well as a breach of contract against specialty marketing in 2010. The Supreme Court of Alabama upholds those verdicts in 2013, and here the complaint alleging defamation in the letter was sent by the, everybody agrees, in March of 2014. And so the difficulty I'm having understanding is how Ruckerfeldman would apply here in this case to bar a claim, an alleged defamation that doesn't arise until after everything in the state court is complete. What am I missing? Your Honor, the magistrate judge and the district judge found that everything that was claimed to be defamation had already been judicially determined to be a fact in the old case. The difficulty with that, I think, and I don't want to interrupt your thoughts. I mean, you should complete it. But the difficulty with that, I think, and maybe in responding you can sort of pick up the thread of where you were going, is that when your opponent was reading from Exxon, I actually thought he was going to read a different passage, which seems to me even more closely on point here, where the court says, if a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that the state court has reached in a case to which he was a party, then there is jurisdiction, and state law determines whether the defendant prevails under the principles of preclusion. Doesn't that sound like this case, there is an independent claim, it's a libel claim, even if it does deny a legal conclusion that the state court has reached? Isn't that what happened here, in effect? To some extent, yes, Your Honor. I mean, to some extent, I think the Rooker-Feldman Doctrine, I looked back at the origin of this. Wright and Miller, years ago, described the Rooker-Feldman Doctrine when it was in its infancy as a jurisdictional transmutation of race judicata doctrine. You know what that sounds like to me? It's made up. I mean, that's what I worry about. It sounds like it's made up. It's like a turbocharged preclusion doctrine that has now been dressed in jurisdictional terms. I think that may be exactly what it is. Of course, your answer ought to be that Rooker-Feldman is made up in the sense that the courts made it up. That's right, and I can't deny that. They sort of made that up as a, and you know, those are two case names. They're not really related to anything else. Right, but the theory made sense because at the end of the day, you didn't want the inferior federal courts, the district and circuit courts of the land, playing a role where they were reviewing the highest court judgments of the state court absent unusual circumstances like federal habeas and things like that. But the problem that I'm having, and perhaps you can address for me, is understanding how the state court could have possibly even adjudicated the defamation claim if it did not, by your own concession, arise until four years after that case was presented to a jury in Alabama. I think what they were saying, what the two lower courts were saying, is that it's the same thing the court adjudicated, the state court adjudicated. Did the state court adjudicate a defamation claim under the laws of libel and slander? Was a jury asked and instructed about defamation? Oh, of course not, your Honor. Well, but isn't that the heart of the problem here, that they never had occasion to rule on defamation, they were never presented with defamation, and they answered questions about breach of contract and fraud, period. And now you want to take the new claim and say somehow it undermines to the point of nullification the prior court judgment. And I guess the trouble I'm having is I don't understand, no matter how this defamation case plays out, how it would undermine the initial determination by Alabama courts. Well, the entire claim of defamation is a report of the state court proceeding. And what started this was, I think, me addressing the question to either the magistrate or the district court, I imagine it was the magistrate, that there was a confidentiality order in the circuit court. And, in other words, the circuit court had taken that on on the motion of the target media. And so this is what led the judges in the lower courts into looking at this issue, in addition to just the facts of basically reporting what happened in the state court. And so the issue that we raised was if they wanted this to be confidential, they had their forum to raise that before the local circuit judge, where the case had been, after all the appeals all the way up to the U.S. Supreme Court, it had come back down to a trial judge. The parties had agreed to this confidentiality order. Nobody's ever claimed that this report breached the confidentiality order. The confidentiality order related to some other things like post-judgment discovery. That's what, I think, started this and pushed us into the position where the district court looks at this and the magistrate, in the first instance, looks at this and says, this is the same stuff that was all adjudicated all the way up the line. Let me come at it in a slightly different way and ask you about the meaning of inextricably intertwined and ask whether, if successful here on the defamation claim, that would effectively nullify the state court judgment on the issues that the state court had to resolve. I think in the broad sense it would because basically what is being done, in other words, if they came and said, this is something entirely different, but they said my dog was ugly or something like that, something that was not adjudicated in the state court in the prior proceedings. I guess this is where I'm having the problem. The state court decided whether or not there was a breach of contract and fraud. In the present adjudication involving defamation, the defamation claim asks whether the letter's contents amount to libel per se, fraudulent misrepresentation. I don't see how the answer to the second question would nullify the judgment the state court rendered in the first. Well, it certainly wouldn't make it void in the strictest sense. But to successfully pursue the libel action, the facts determined by the lower court would have to be determined opposite to the way, I mean the state courts, opposite to the way the state courts did. You're trying to rely on the line of reasoning that effective nullification includes the notion that the second suit can succeed only to the extent that the first judgment was, or the fact found in the first judgment was wrong. Is that right? Yes. And I guess my question in part is whether that, what I'll call a looser understanding of inextricably intertwined can survive Exxon. Can you explain to me why you think that can survive Exxon? Well, I think they, in the Exxon case, the court was saying that the, if the state court and its decision is effectively undone or has to be in order to prevail in the federal case, then that's still inextricably intertwined. I just, I think that there's no way that there can be a prevailing by the plaintiff in this case without undoing what the long proceedings in the state court determine. But certainly not an undoing in the sense of Rooker itself, right? I mean, Rooker was an outrageous example of this, where somebody marches into federal district court and says, I want you to review the decision of the state Supreme Court and reverse it effectively. Right. So it's not that. I mean, this is maybe Judge Marcus's point. It's not a nullification in the strict sense. You're just saying it's sort of a spatial or philosophical nullification in the sense that it contradicts some earlier finding that was made. And I think this is what, that's why I go back to Wright and Miller talking about this in the first place. In other words, the way I would have said this years ago when I was in law school before we changed the terminology, I would have said all these things are race judicata. And that would have been my answer. And I think that's, in effect, what the lower courts were saying. They were saying, and that's what the Rooker fell on. But it seems to me the difficulty is what we're looking at is the state court judgment. Is the judgment of the state court nullified by virtue of one resolution of the subsequent claim? And I don't see how the judgment would so effectively be nullified as to amounting to asking a federal court, an inferior federal court, to review the work of the Alabama courts. Do you follow what I'm saying? I do, Your Honor. I understand. I guess there might be a very narrow Rooker-Feldman doctrine that would only be, you know, like Your Honor was saying, a direct reversal of and undoing. But isn't the judgment what we have to focus on? Certainly post-Exxon aren't we looking at the judgment of the state court and asking whether the federal court is being required to effectively alter that judgment, vacate that judgment, reverse that judgment. And I don't see how that could happen on a defamation claim that arose later. I think it would just be if we had to go to trial on this defamation case and we're going to retrial those same issues to see if they were true or not. Right, but against a different legal standard to answer a different question about a different claim. Isn't that right? Well, as my understanding, that's what the Rooker-Feldman doctrine was trying to do is keep, like in this case here, we've got a state court loser, as they referred to it, that wants to have the federal courts undo the thing. Right, but what I'm trying to do is to analytically sort out preclusive analysis on the one hand from Rooker-Feldman analysis on the other. And while they tend to overlap, there's a distinction between what we're talking about in Rooker-Feldman and what we're talking about in preclusion analysis, isn't there? I suppose there is, but we think this is a precluded issue and that that's what... Well, then you'd be free to raise that, wouldn't you? Well, we did, Your Honor, we did, and this was the ruling that... The judge ruled on Rooker-Feldman. That's true. It wasn't a question that he ruled on a theory of res judicata or collateral estoppel. It was Rooker-Feldman, he said, go back and consider whether or not there's a jurisdictional bar arising under the doctrine of Rooker-Feldman, not whether there was preclusion. That was not couched in issue preclusion language. Right, but the district court never had occasion to answer a preclusion question, did it? Other than... And you might be right about preclusion, but that's not the issue that was perfected and was presented to us on appeal, was it? Only to the extent that that's what Rooker-Feldman is, only to the extent that it's an issue preclusion doctrine. Okay. Thank you very much. Thank you, Your Honor. Briefly, my partners tell me when you don't have much to say, you should probably sit down. But the confidentiality order was a post-judgment issue about producing certain financial statements of privately held companies, and that was the purpose of that confidentiality order. The issues related to issue preclusion, they can be pled, we can argue those later. So you agree that they still have a preclusion-based summary judgment motion in the offing? They haven't waived it. I mean, that's a separate issue in this case. But those are issues for down the road. The issue here is, did the district court have subject matter jurisdiction to entertain my client's claims? And we think based on ExxonMobil versus Saudi Arabia that they clearly did at this stage. Thank you, Your Honor. Thank you very much. Thank you both. And we'll proceed to the next case.